**FILED**

UNITED STATES COURT OF APPEALS

MAR 18 2008

FOR THE NINTH CIRCUIT

MOLLY DWYER, ACTING CLERK
U.S. COURT OF APPEALS

JADA TOYS, INC., a California
Corporation,

          Plaintiff-counter-defendant -
Appellee

v.

MATTEL, INC., a Delaware Corporation,

          Defendant-counter-claimant -
Appellant

No.  05-55627
D.C. No.  CV-04-02755-RGK

**MANDATE**



RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 24 2008

CALIFORN
DEPU

The judgment of this Court, entered 8/2/07, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule
41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly Dwyer
Acting Clerk of Court

By: Synitha Fuller
Deputy Clerk

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

MAR 2 6

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JADA TOYS, INC. a California
corporation,
       *Plaintiff-Counterdefendant-*
           *Appellee,*

v.

MATTEL, INC., a Delaware
corporation,
       *Defendant-Counterclaimant-*
           *Appellant.*

No. 05-55627

D.C. No.
CV-04-02755-RGK
(FMO)

AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
April 12, 2007—Pasadena, California

Filed August 2, 2007
Amended February 21, 2008

Before: Harry Pregerson and Johnnie B. Rawlinson,
Circuit Judges, and Brian E. Sandoval,* District Judge.

Opinion by Judge Sandoval

---

*The Honorable Brian E. Sandoval, United States District Judge for the
District of Nevada, sitting by designation.

## SUMMARY

### Intellectual Property/Trademarks

The court of appeals reversed a judgment of the district court. The court held that dissimilarity of trademarks alone does not obviate the need to inquire into evidence of other important factors in determining the likelihood of confusion; only upon such an inquiry may a court ensure that its judgment as to the likelihood of confusion is fully informed and without error.

Appellee Jada Toys, Inc., which registered its "HOT RIGZ" trademark for its toy cars in 2002, brought a trademark infringement suit in district court in California against appellant Mattel, Inc., which had been marketing its "HOT WHEELS" miniature vehicles since 1968, selling billions of the toys worldwide. Mattel made federal and state trademark infringement counterclaims, including allegations that Jada's HOT RIGZ mark infringed on its HOT WHEELS trademark and copyright, and diluted the mark. Both marks were accompanied by a flame, and used similar colors. Mattel submitted two surveys showing that respondents thought that the HOT RIGZ toys were either made by Mattel or by the same company that produced HOT WHEELS, or that whatever company did produce it required permission from Mattel to sell the product. The district court granted summary judgment in favor of Jada on Mattel's infringement claims, relying solely on the dissimilarity of the marks to determine that no likelihood of confusion existed.

Mattel appealed.

[1] Courts employ an eight factor test to determine the likelihood of confusion. These factors include similarity of the marks. [2] The test for likelihood of confusion is pliant, and some factors are much more important than others. [3] How-

ever, the court of appeals has never countenanced a likelihood
of confusion determination based on a consideration of dis-
similarity alone or on the consideration of any single factor.
Instead, it has regularly applied all the relevant factors. Thus,
while a likelihood of confusion determination may ultimately
rest on a subset of factors, evidence of relatively important
factors must be considered as part of that set. In the context
of two subjectively dissimilar marks, evidence of actual con-
fusion and evidence defining the context in which the goods
are sold is particularly relevant. **[4]** Although Ninth Circuit
cases have suggested that dissimilarity alone may be a suffi-
cient basis upon which to judge the likelihood of confusion,
that the language employed in those cases constituted dicta
and, therefore, the court of appeals was not bound by it. **[5]**
Dissimilarity alone does not obviate the need to inquire into
evidence of other important factors. Only upon such an
inquiry may a court ensure that its judgment as to the likeli-
hood of confusion is fully informed and without error.
Because the district court considered only the dissimilarity of
the marks in question, its grant of summary judgment in favor
of Jada had to be reversed.

**[6]** As to Mattel's dilution claim, in order to prove a viola-
tion, a plaintiff must show that (1) the mark is famous and
distinctive; (2) the defendant is making use of the mark in
commerce; (3) the defendant's use began after the mark
became famous; and (4) the defendant's use of the mark is
likely to cause dilution by blurring or dilution by tarnishment.
**[7]** For a plaintiff to establish that the mark is being used in
commerce, the mark used by the alleged diluter must be iden-
tical, or nearly identical, to the protected mark. **[8]** It had to
be concluded that a reasonable trier of fact could find that the
HOT WHEELS and HOT RIGZ marks were nearly identical.
Both marks contained the word "hot," were accompanied by
a flame, and used similar colors.

**[9]** To be considered famous the mark must be truly promi-
nent and renowned. A reasonable trier of fact could conclude

that the HOT WHEELS mark was famous: it had been in use for over 37 years and billions of units had been sold. **[10]** A reasonable trier of fact could also conclude that Jada began using its mark after HOT WHEELS became famous, as the HOT WHEELS mark had been acquiring recognition for over 30 years before HOT RIGZ entered the market.

**[11]** Where, as here, a plaintiff's claim is based on a dilution by blurring theory, the question is whether the association arising from the similarity between a mark or trade name and a famous mark impairs the distinctiveness of the famous mark. **[12]** A reasonable trier of fact could conclude that the marks were quite similar. And, there was significant evidence of actual association between the alleged diluting mark and the famous mark, as shown by Mattel's surveys. **[13]** These surveys suggested that Mattel's HOT WHEELS mark did not adequately identify its product because Jada was able to convey, through the use of its HOT RIGZ mark, the impression that Mattel either produced or allowed the production of HOT RIGZ. Thus, a reasonable trier of fact could conclude that this evidence was sufficient to establish the existence of a likelihood of dilution. The district court's entry of summary judgment had to be reversed. **[14]** With respect to Mattel's copyright claim, the district court did not conduct an objective test as to both ideas and expression as required under the extrinsic test. A trier of fact could conclude that the logos were similar from the standpoint of the ordinary reasonable observer. As a result, the district court's entry of summary judgment in favor of Jada on Mattel's copyright claim had to be reversed.

---

## COUNSEL

Adam R. Fox, Esq., Los Angeles, California, for plaintiff-counterdefendant-appellee Jada Toys, Inc.

Jill M. Pietrini, Esq., Los Angeles, California, for defendant-counterclaimant-appellant Mattel, Inc.

## OPINION

SANDOVAL, District Judge:

Defendant-Appellant Mattel, Inc. ("Mattel") appeals the grant of summary judgment in favor of Jada Toys, Inc. ("Jada") on Mattel's federal and state trademark infringement counterclaims. Mattel also challenges the district court's entry of summary judgment in favor of Jada as to its dilution and copyright claims.

We hold that because the district court erred in its application of the relevant infringement test, the district court's entry of summary judgment in Jada's favor as to those claims is reversed. We also hold that genuine issues of material fact exist as to Mattel's copyright and dilution claims and, therefore, the district court's entry of summary judgment as to those claims in favor of Jada is also reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jada Toys is a California corporation that specializes in the distribution and sale of miniature diecast toy cars, trucks, and other vehicles. Generally, these vehicles are scale model replicas of actual vehicles. From 2001 to 2004, Jada produced a line of toy trucks called HOT RIGZ.

In 2001, Jada filed an application for a trademark registration of the term HOT RIGZ with the United States Patent and Trademark Office ("U.S. PTO"). The trademark was issued by and registered with the U.S. PTO in 2002, though Jada used its HOT RIGZ trademark in advertising material and on its toys and their packaging from 2001 to 2004.

Mattel is also a toy company. Among its many lines of toys is its familiar HOT WHEELS miniature vehicle brand, which it has been marketing since 1968. The HOT WHEELS vehicle line includes small scale versions of big rig trucks. Since 1968, Mattel has employed the use of a flame logo ("68 logo") to identify the HOT WHEELS brand. In 1982 Mattel developed a complementary version of the 68 logo, this one incorporating the Mattel seal, to be used in conjunction with the sale of its product. Mattel owns U.S. federal trademark registrations for both of these flame logos.

On April 20, 2004, Jada filed an action against Mattel, asserting claims for trademark infringement, false designation of origin, and unfair competition. Jada's allegations, however, were not related to its HOT RIGZ mark; rather, Jada claimed that Mattel's advertising and sale of its OLD SCHOOL and NEW SCHOOL lines infringed on Jada's use of its registered trademark OLD SKOOL. Mattel asserted various affirmative defenses and counterclaims. Among the counterclaims were allegations that Jada's HOT RIGZ mark infringed on Mattel's HOT WHEELS mark.[1] Mattel also counterclaimed for copyright infringement and dilution. Ultimately, each party submitted motions for summary judgment.

On March 15, 2005, the district court issued its ruling regarding the parties' motions for summary judgment. As to Jada's claims relating to Mattel's OLD SCHOOL and NEW SCHOOL marks, the court granted summary judgment in Mattel's favor. And as to Mattel's counterclaims for infringement, copyright, and dilution, relating to Jada's use of its HOT RIGZ logo, the court granted summary judgment in Jada's favor. In granting summary judgment as to Mattel's

[1]Mattel alleged four separate infringement claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) common law unfair competition and unfair competition under California Business and Professions Code section 17200; and (4) common law passing off.

infringement claims, the district court relied on the dissimilarity of the marks alone to determine that no likelihood of confusion existed. Mattel timely appealed the grant of summary judgment as to its counterclaims.

## II.  STANDARD OF REVIEW

The review of a grant of summary judgment as to an infringement claim is *de novo. Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). As such, we "must determine whether, 'viewing the evidence in the light most favorable to the nonmoving party, . . . there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law.' " *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809-10 (9th Cir. 1997)). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Id.* (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). The Court may affirm a judgment on any ground fairly supported by the record. *Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir. 1989) (citing *DeNardo v. Murphy,* 781 F.2d 1345, 1347 (9th Cir. 1986), *cert. denied,* 476 U.S. 1111 (1986)).

## III.  ANALYSIS

### A.  MATTEL'S TRADEMARK CLAIMS

All of Mattel's infringement claims are subject to the same test. *See Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir. 1988) (citing *Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987)); *see also Vuitton Et Fils S.A. v. J. Young Enter.*, 644 F.2d 769, 777 (9th Cir. 1981) (noting that if a product is marketed in such a way so as to cause a likelihood of confusion, the defendant might be guilty of "palming off"). Therefore, the critical determination is " 'whether an alleged trademark infringer's use of a

mark creates a likelihood that the consuming public will be confused as to who makes what product.' " *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003) (quoting *Thane Int'l Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002)).

[1] We employ an eight factor test ("*Sleekcraft* factors") in determining the likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053-54 (9th Cir. 1999). These factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citations omitted).

[2] We have previously noted that the test for likelihood of confusion is "pliant," and that "[s]ome factors are much more important than others, . . . ." *Brookfield*, 174 F.3d at 1054. Jada seizes on such language as an indication that the district court's consideration of the dissimilarity of the marks alone was sufficient to support its conclusion. We disagree.

[3] Though the language we have used warns against "excessive rigidity" in applying the test, *see id.*, we have never countenanced a likelihood of confusion determination based on a consideration of dissimilarity alone or, indeed, on the consideration of any single factor. Instead, we have regularly applied all the relevant factors, noting that a final likelihood of confusion determination may rest on those factors that are of the most relative importance in any particular case. *See, e.g., Surfvivor*, 406 F.3d at 631-34 (applying all eight factors and noting that "the test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."). Thus, while a likelihood of confusion determination may ultimately rest on a sub-

set of factors, evidence of relatively important factors must be considered as part of that set. In the context of two subjectively dissimilar marks, evidence of actual confusion and evidence defining the context in which the goods are sold are particularly relevant.

To hold otherwise would allow the possibility that persuasive evidence of a particular factor may be considered at the expense of relevant evidence of others. This problem is particularly acute where, as here, a court relies on the dissimilarity of the marks to conclude that no likelihood of confusion exists. In such a case, the potential for a judge to elevate his or her own subjective impressions of the relative dissimilarity of the marks over evidence of, for example, actual confusion, is great. And where the subjective impressions of a particular judge are weighed at the expense of other relevant evidence, the value of the multi-factor approach sanctioned by this Court is undermined.

**[4]** Today's holding is consistent with our prior decisions. For while Jada accurately cites language from the case law of this Circuit suggesting that dissimilarity alone may be a sufficient basis upon which to judge the likelihood of confusion, *Brookfield*, 174 F.3d at 1054; *Sleeper Lounge Co. v. Bell Mfg Co.*, 253 F.2d 720, 723 (9th Cir. 1958), we conclude that the language employed in those cases constitutes dicta and, therefore, we are not bound by it. *See Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1081 (9th Cir. 2002) (holding that a panel is not bound by dicta in prior decisions).

In *Brookfield*, for example, we stated that "[w]here the two marks are entirely dissimilar, there is no likelihood of confusion. 'Pepsi' does not infringe Coca-Cola's 'Coke.' Nothing further need be said." *Brookfield*, 174 F.3d at 1054. In *Brookfield*, however, we did not conclude that the marks in question were so dissimilar that no likelihood of confusion could exist. *Id.* at 1054-55. To the contrary, we found that the marks were quite similar. *Id.* Moreover, there is no indication that in

*Brookfield* we ignored evidence of other important factors in determining that dissimilarity could be determinative. *See id.* at 1054-60. And, beyond that, there was no evidence of actual confusion presented in the case. *Id.* at 1060. Thus, in *Brookfield* we were not confronted with a situation where, as here, strong evidence of other important factors existed to counter the conclusion that dissimilarity alone could be dispositive. Consequently, in *Brookfield* we were not afforded the opportunity to consider fully the ramifications of our comment.

The same is true of our decision in *Sleeper Lounge*. There, we noted that "[similarity of the marks] is the one essential feature, without which the others have no probative value." *Sleeper Lounge*, 253 F.2d at 723. But as was the case in *Brookfield*, in *Sleeper Lounge* we expressly noted that no evidence of actual confusion had been presented. *Id.* Thus, in *Sleeper Lounge* we were no more able to consider fully the impact of our statement than we were in *Brookfield*.

[5] While the *Brookfield* and *Sleeper Lounge* decisions offer important insight into the persuasiveness of dissimilarity, we must, nonetheless, conclude that though it may be true that very dissimilar marks will rarely present a significant likelihood of confusion, dissimilarity alone does not obviate the need to inquire into evidence of other important factors. Only upon such an inquiry may a court ensure that its judgment as to the likelihood of confusion is fully informed and without error. Therefore, because the district court considered only the dissimilarity of the marks in question, we reverse its grant of summary judgment in favor of Jada.

## B.   MATTEL'S DILUTION CLAIM

[6] Mattel brought dilution claims under both federal and California state law. The analysis under each is the same. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). In order to prove a violation, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant

is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment.[2] 15 U.S.C. § 1125(c)(1); California Business and Professions Code section 14330.

[7] Neither federal law nor California state law requires a showing of competition or likelihood of confusion to succeed on a dilution claim. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (citing 15 U.S.C. § 1127).; Cal. Bus. & Prof. Code § 14330. However, for a plaintiff to establish that the mark is being used in commerce (as per step two),"the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Thane Int'l*, 305 F.3d at 905 (noting that this circuit's description of dilution by blurring and by tarnishment requires a defendant to use the plaintiff's actual mark) (citation omitted). In order

---

[2] We note that in this case the district court applied the prior version of the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c) (2000), which required a showing of actual dilution. The actual dilution requirement was a product of the Supreme Court's decision in *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003), where the Court held that the federal dilution statute required a showing of actual dilution. However, since that time the FTDA has been amended so as to require only a likelihood of dilution to succeed. Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312 § 2(1), 120 Stat. 1730. In this case, we choose to apply the standard currently in operation so as to adhere to our prior precedent established in *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1009-10 (9th Cir. 2004), in which we held that application of the FTDA to an alleged diluting mark that was in use before the statute's passage was not retroactive because the FTDA authorizes only prospective relief.

We are aware that in *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007), we applied the FTDA retroactively, thereby creating an unintentional intra-circuit conflict with *Nissan*. In *Horphag*, however, neither party mentioned the TDRA in its briefs, nor moved for a petition for panel rehearing or to vacate the mandate in light of the TDRA's passage. Moreover, the plaintiff in *Horphag* prevailed under the more stringent version of the federal dilution statute. Accordingly, recalling the *Horphag* mandate at this point would serve no purpose.

to be nearly identical, two marks "must be 'similar enough that a significant segment of the target group of customers sees the two marks as essentially the same.' " *Id.* at 906 (quoting *Playboy Enters. Inc. v. Welles*, 279 F.3d 796, 806 n.41 (9th Cir. 2002)).

Here, the district court granted summary judgment in favor of Jada on Mattel's dilution claims because the marks at issue were not identical or nearly identical. Mattel claims that because it has shown a likelihood of confusion, that finding was inappropriate.

Jada claims, on the other hand, that the district court's determination that the marks were not identical is supported by the record and, therefore, summary judgment was appropriate. Jada also contends that Mattel has not made a showing of actual dilution sufficient to support its claim under federal law.[3] And as to Mattel's state law claim, Jada argues that Mattel is barred from such a claim because Jada owns a valid federal registration mark, which acts as a complete bar to a dilution claim under state law. 15 U.S.C. § 1125(c)(6).[4]

[8] Turning first to the district court's determination that the marks in question were not sufficiently identical, we conclude that a reasonable trier of fact could find that the HOT WHEELS and HOT RIGZ marks are nearly identical. They both contain the word "hot," they both are accompanied by a flame, and they use similar colors; they also convey a similar meaning and connotation *vis a vis* their use of the modifier

---

[3]This argument is largely moot in light of the TDRA's requirement that a showing of only a likelihood of dilution is necessary to succeed on a dilution claim. *See* 15 U.S.C. § 1125(c)(1).

[4]Jada's claim that its HOT RIGZ registration acts as a bar to Mattel's state law claim is misplaced because Mattel's eighth counterclaim is for cancellation of the HOT RIGZ registration under 15 U.S.C. § 1064. As such, if Mattel can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. § 1125(c)(6) will be inapplicable.

"hot." *Cf. Thane Int'l*, 305 F.3d at 907 (holding that a reasonable trier of fact could conclude that the marks "OrbiTrek" and "TREK" were nearly identical).

In determining the degree of fame a mark retains, 15 U.S.C. § 1125(c)(2)(A) provides a non-exclusive list of four factors that a court may consider. These factors include:

> (i)   The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

> (ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.

> (iii)   The extent of actual recognition of the mark.

> (iv)   Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.*

[9] Here, a reasonable trier of fact could conclude that the HOT WHEELS mark is famous: it has been in use for over thirty-seven years; 350 million dollars have been expended in advertising the mark; three billion HOT WHEELS units have been sold since the inception of the mark; and HOT WHEELS are sold in all fifty states and throughout the world.

[10] A reasonable trier of fact could also conclude that Jada began using its mark after HOT WHEELS became famous. The HOT WHEELS mark has been in use since 1968, but it was only in 2001 that Jada began to employ the use of HOT RIGZ. Thus, the HOT WHEELS mark had been acquiring recognition for over thirty years before HOT RIGZ entered the market.

[11] The federal dilution statute also requires a showing of likelihood of dilution either by blurring or by tarnishment. 15

U.S.C. § 1125(c)(1). Where, as here, a plaintiff's claim is based on a dilution by blurring theory, the question is whether the "association arising from the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(B). A court may consider all relevant factors in making this determination, including the six identified by the statute:

> (i)   The degree of similarity between the mark or trade name and the famous mark.

> (ii)   The degree of inherent or acquired distinctiveness of the famous mark.

> (iii)   The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

> (iv)   The degree of recognition of the famous mark.

> (v)   Whether the user of the mark or trade name intended to create an association with the famous mark.

> (vi)   Any actual association between the mark or trade name and the famous mark.

[12] As has been stated, in this case a reasonable trier of fact could conclude that the marks at issue are quite similar. Moreover, there is significant evidence of actual association between the alleged diluting mark and the famous mark. As evidence of such, Mattel has submitted two surveys. In the first, respondents were exposed to the HOT RIGZ name and asked who they believed "puts out or makes" a toy vehicle with that name. Twenty-eight percent of respondents thought that the toy vehicle put out under that name was either made by Mattel or by the same company that produced HOT

WHEELS, or that whatever company did produce it required permission from Mattel to sell the product.

In a separate survey, respondents were shown a HOT RIGZ package and asked who they thought put out that product. Of the respondents, 7% believed it was either made by Mattel or by the same company that produced HOT WHEELS, or that whatever company did produce it required permission from Mattel to sell the product.

[13] Not only do these surveys indicate that consumers associate one mark with the other; they suggest, too, that Mattel's HOT WHEELS mark does not adequately identify its product because Jada is able to convey, through the use of its HOT RIGZ mark, the impression that Mattel either produces or allows the production of HOT RIGZ. *See Moseley*, 537 U.S. at 433-34 (holding that such evidence is sufficient to meet the heightened standard of actual dilution). Thus, a reasonable trier of fact could conclude that this evidence was sufficient to establish the existence of a likelihood of dilution.[5] The district court's entry of summary judgment is, therefore, reversed.

## C.  MATTEL'S COPYRIGHT CLAIMS

In order to succeed in a copyright infringement claim, "a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). The protected elements of a work are those elements which are "original," which is to say they are the product of "independent creation, not novelty." *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) (citations omit-

---

[5] The evidence of likelihood of dilution here is also enough to support such a finding with respect to the California dilution statute. *See* Cal. Bus. & Prof. Code § 14330 (requiring a showing of only likelihood of dilution).

ted).[6] Copying can be proved by evidence indicating that the infringer had access to the copyrighted work and that the protected portions of the works are substantially similar. *Id.* at 1110.

This Court has traditionally employed a two-part test to determine whether two works are substantially similar: an extrinsic test and an intrinsic test. *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977). The specifics of the extrinsic test have evolved during the years following *Marty Krofft.* As we explained in *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994):

> As originally adopted in [*Krofft*], the extrinsic prong was a test for similarity of ideas based on external criteria; analytic dissection and expert testimony could be used, if helpful. The intrinsic prong was a test for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance. *Id.* As it has evolved, however, the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression, whereas the intrinsic test continues to measure expression subjectively. (citations omitted).

In this case, the district court concluded that because the logos at issue were not similar, the extrinsic test was not met. It also found that since the logos were not similar, no reasonable person could believe that they conveyed a similar expression and, therefore, the intrinsic test had not been satisfied.

---

[6] Jada does not dispute that Mattel retains copyrights for its HOT WHEELS flame logos. Jada also only tangentially disputes that some elements of the flame logos are not protectable. However, the combination of the words used, the stylization of the flame graphic, and the colors chosen, suggest that elements of the flame logo are protectable for the purposes of a copyright infringement action. *Cf. Roth Greeting Cards*, 429 F.2d at 1109.

[14] We hold, however, that the district court did not conduct an objective test as to both ideas and expression as required under the extrinsic test outlined in *Apple Computer*. In addition, as to the intrinsic test, Mattel has raised a material issue of fact. A trier of fact could conclude that the logos are similar "from the standpoint of the ordinary reasonable observer." *Id.* Therefore, the district court's entry of summary judgment in favor of Jada as to Mattel's copyright claim is reversed.

## IV.  CONCLUSION

The district court's reliance on a single *Sleekcraft* factor — dissimilarity of the marks — in its likelihood of confusion determination was in error; therefore, its entry of summary judgment in Jada's favor as to Mattel's trademark claims is reversed. Those claims are hereby remanded for consideration consistent with this opinion. The district court must analyze Mattel's copyright claim under the *Apple Computer* framework. In addition, Mattel raised a genuine issue of material fact as to its dilution and copyright claims; thus, the district court's entry of summary judgment in favor of Jada as to those claims is also reversed.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson/West.

MOATT    INVATT
31        CLOSED
PTSEAL

i

INTERNAL USE ONLY: Proceedings include all events.
05-55627 Jada Toys, Inc. v. Mattel, Inc.

3/13

| | |
|---|---|
| JADA TOYS, INC., a California Corporation<br>    Plaintiff-counter-<br>defendant - Appellee | Adam Randall Fox, Esq.<br>FAX 213/623-4581<br>213/624-2500<br>31st Floor<br>[COR LD NTC ret]<br>SQUIRE, SANDERS & DEMPSEY, LLP<br>555 S. Flower Street<br>Los Angeles, CA 90071 |
|   v. | |
| MATTEL, INC., a Delaware Corporation<br>    Defendant-counter-<br>claimant - Appellant | Jill M. Pietrini, Esq.<br>310/312-4000<br>[COR LD NTC ret]<br>MANATT PHELPS & PHILLIPS, LLP<br>11355 W. Olympic Blvd.<br>Los Angeles, CA 90064 |